United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 03-41425

———————

RUBEN RAMIREZ CARDENAS,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee.

———————

Appeal from the United States District Court
For the Southern District of Texas

———————

Before BARKSDALE, GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner Ruben Ramirez Cardenas ("Cardenas"), a Mexican national, was convicted of capital murder and sentenced to death. Cardenas filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 2254. The district court denied the petition as well as Cardenas' request for a certificate of appealability ("COA"). Cardenas now requests a COA from this court on four issues pursuant to 28 U.S.C. §

2253(c)(2). He claims that: (1) the trial court violated his constitutional rights by excluding venire members opposed to the death penalty; (2) his counsel provided ineffective assistance by failing to oppose the exclusion of venire members opposed to the death penalty; (3) the trial court violated the Constitution by refusing to allow discussion of his parole eligibility during sentencing; and (4) the failure to advise him of his right to consular assistance under the Vienna Convention on Consular Relations ("Vienna Convention") requires review by the district court to determine if it prejudiced the fairness of his trial.

## I

On the morning of February 22, 1997 the parents of Mayra Laguna reported to the police that their daughter was missing. In the course of investigating Mayra's whereabouts, the police spoke with Cardenas, Mayra's first cousin, who voluntarily went to the police station. For more than ten hours, Cardenas remained at the police station and was interrogated by nine different law enforcement officers about Mayra's disappearance. Although a Mexican national, Cardenas was never advised by authorities of his right to consular access. Cardenas was thereafter arrested when his friend, and later co-defendant, implicated him in the crime. After his arrest, Cardenas gave a statement to authorities wherein he admitted that he had killed Mayra and led police to the scenes where he raped the victim and disposed her body.[1]

Cardenas was convicted of capital murder and sentenced to death. His conviction was affirmed by the Texas Court of Criminal Appeals and his habeas appeal was denied. Cardenas' federal habeas petition and subsequent application for COA were also denied.

---

[1] Cardenas, however, maintained that he did not kill Mayra intentionally and that she had left her parents' house with him voluntarily.

II

To receive a COA, Cardenas must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court rejects a claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In capital cases, doubts about whether the petitioner has met the standard must be resolved in favor of the petitioner. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). When a petition is dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

At the COA stage, a court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 481). We do not fully consider "the factual or legal bases adduced in support of the claims," and a petitioner need not show that an appeal will succeed in order to be entitled to a COA. *Id.* at 336-37. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342.

The district court should evaluate the habeas petition to see if the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it "resulted in a decision that was based on an unreasonable determination

3

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2). In addition, a state court's findings of fact are entitled to a presumption of correctness unless the petitioner rebuts that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Thus, when evaluating a COA petition, we consider *only* whether the district court's application of Antiterrorism and Effective Death Penalty Act ("AEDPA") deference to the petitioner's claim is debatable among jurists of reason. *Miller-El*, 537 U.S. at 341.

New constitutional rules of criminal procedure are generally not applied retroactively to cases that become final before a new rule is announced. *Teague v. Lane*, 489 U.S. 288, 310 (1989). "*Teague* remains applicable after the passage of the AEDPA." *Robertson v. Cockrell*, 325 F.3d 243, 255 (5th Cir. 2003) (citing *Horn v. Banks*, 536 U.S. 266, 272 (2002)).

III

A

Cardenas argues initially that the trial court improperly excused several potential jurors because they were categorically opposed to the death penalty, but failed to ascertain whether they could discharge their duties according to the trial court's instructions and their oath of office.

Cardenas' claim is procedurally barred from federal review because he failed to raise a contemporaneous objection to the jurors' exclusion. *Fisher v. State*, 169 F.3d 295, 300 (5th Cir. 1999). Failure to object to the exclusion of a prospective juror waives any error. *See Ladd v. State*, 3 S.W.3d 547, 562 (Tex. Crim. App. 1999). The doctrine of independent and adequate state ground applies not only when federal courts review a state court judgment, "but in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions. . . . The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims

4

because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds."[2] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of Cardenas' claim. *Fisher*, 169 F.3d at 300. The state habeas court found that this claim was procedurally defaulted because Cardenas' attorney failed to object to the rulings excusing potential jurors and even made remarks agreeing with the prosecution's challenges in several cases, thus failing to preserve any alleged error in regard to these jury selection issues for review. We agree. *Id.*; *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). Cardenas has not shown that the district court's ruling on the procedural ground is debatable.

The state habeas court's discussion of the merits as an alternative reason for its holding does not nullify its procedural ruling. *See Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir.1998). Furthermore, even if this court were to address the merits of Cardenas' claim, he has not demonstrated that the state habeas court's finding that the exclusion of venire members because of their inability to consider the death penalty was objectively unreasonable. *See* 28 U.S.C. § 2254(d)(2). The general rule states that prospective jurors may be excluded if they "would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or . . . that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt."

---

[2] A procedural bar may be overcome, however, if the petitioner can show cause and prejudice, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 510 U.S. at 750. Cardenas failed to allege, much less show, cause or prejudice.

5

*Witherspoon v. Illinois*, 391 U.S. 510, 522 n.21 (1968). A jury, however, may not be chosen by excluding veniremen for cause simply because they may be "hesitant in their ability to sentence a defendant to death." *Morgan v. Illinois*, 504 U.S. 719, 732 (1992) (citing *Witherspoon*, 391 U.S. at 522, n.21). The trial court in this case first inquired into each juror's general opinion of capital punishment and then made more specific inquiries required by federal law. The trial court specifically examined whether this view would prevent or substantially impair each juror's performance given any instructions received. Potential jurors who were excluded expressed views that indicated their opposition to the death penalty was so strong that it would "prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial." *Lockhart v. McCree*, 476 U.S. 162, 165 (1986). The trial court's finding of juror bias is entitled to a presumption of correctness and the petitioner has the burden of rebutting these determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Fuller v. Johnson*; 114 F.3d 491, 500-01 (5th Cir. 1997). Cardenas has not shown that the district court's ruling on the merits is debatable.

B

Cardenas argues next that his trial counsel's failure to oppose the exclusion of so many prospective jurors opposed to capital punishment violated his Sixth Amendment right to effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, Cardenas must show that (1) his counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's conduct. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As discussed above, any objection to the exclusion of the prospective jurors would have been unnecessary and baseless because the jurors were properly excluded. Therefore, it is not debatable among jurists of reason that the conduct of Cardenas' counsel was

6

neither objectively unreasonable nor was he prejudiced by his counsel's conduct.

C

Cardenas also argues that his rights under the due process clause, the cruel and unusual punishment clause, and the compulsory process clause of the Constitution were violated by the trial court's refusal to permit any discussion of the possibility of parole at trial.

Cardenas concedes that the Constitution only requires that jurors be told when a defendant who could receive a life-imprisonment sentence is ineligible for parole. *See Simmons v. South Carolina*, 512 U.S. 154, 168-69 (1994). In *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) the Supreme Court stated that *Simmons* only requires the introduction of parole evidence when the defendant could be given a life sentence and is ineligible for parole under state law. This court has consistently held that *Simmons* does not apply to Texas because it does not have an alternative of life-without-parole to the death penalty. *See Tigner v. Cockrell*, 264 F.3d 521, 525 (5th Cir. 2001) (citing *Simmons*, 512 U.S. at 168 n.8), *cert. denied*, 534 U.S. 1164 (2002). Furthermore, this court is barred from granting habeas relief based on the non-retroactivity principle of *Teague v. Lane*, 489 U.S. 288 (1989), which states that a "federal court may not create [a] new constitutional rule of criminal procedure on habeas review." *See Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001) (finding that any extension of *Simmons* violated *Teague*).

Cardenas' argument that the trial court's refusal to inform the jury of the parole implications of a life sentence violated the Eight Amendment's prohibition against cruel and unusual punishment also fails. This court has consistently found that the Eight Amendment does not require that a jury be informed of parole eligibility. *See Tigner*, 264 F.3d at 525.

7

Cardenas claims further that the compulsory process clause of the Sixth Amendment allows him the right to present a "complete defense," including the presentation of parole-eligibility information. Cardenas concedes that this argument has not been addressed by either the Supreme Court or this court, but argues that in construing and applying *Teague*, the extension of old case law to new facts only establishes a "new rule" when the extension is necessarily controversial, but not when it is an unremarkable application under existing precedent. Cardenas argues that *United States v. Scheffer*, 523 U.S. 303 (1998) controls all instances where relevant evidence of great probative value to a criminal defendant has been excluded, whether or not the constitutionality of excluding such evidence has been determined under the Sixth Amendment by the Supreme Court. Cardenas cites no Supreme Court authority interpreting *Scheffer* to require state courts to allow discussion of parole eligibility during the trial proceedings. Thus, no reasonable jurist would have felt *compelled* by *Scheffer* to conclude that the rule Cardenas seeks was required by the Constitution. *See Goeke v. Branch*, 514 U.S. 115, 118 (1995). Moreover, Cardenas' claim would require a new rule of constitutional law foreclosed by *Teague*.

D

Cardenas' final argument is that a COA should be granted because, as a Mexican national, the state should have advised him of his right to consular assistance under the Vienna Convention. The Vienna Convention is a 79-article multilateral treaty negotiated in 1963 and ratified by the United States in 1969 of which Mexico is a signatory nation. *United States v. Jimenez-Nava*, 243 F.3d 192, 195 (5th Cir. 2001). The Vienna Convention, Article 36, paragraph (1)(c), guarantees that a consular officer of a signatory state shall have the right to visit one of its citizens who has been detained in another signatory state in order "to converse and correspond with him and to arrange for his legal

8

representation." VIENNA CONVENTION ON CONSULAR RELATIONS, April 24, 1963, art. 36, 21 U.S.T. 77, 596 U.N.T.S. 261. Article 36, paragraph (1)(b), also provides that the detaining state "shall inform the person concerned without delay of his rights," including the assistance of his consul in responding to the fact of his detention. *Id.* The state concedes that Cardenas was never informed of his consular rights under the Vienna Convention prior to his confession.

Cardenas asserts that had he been informed of his consular rights prior to his confession, he would have invoked them. Cardenas argues that the Mexican Consulate would have explained to him the significance and importance of the right to counsel as an intermediary in the custodial setting, arranged to have a lawyer present, and advised him not to speak to police except on advice from his lawyer. Cardenas thus concludes that he was prejudiced because he would not have confessed had he been made aware of his Vienna Convention rights.

In March 2004, the International Court of Justice ("ICJ") issued its judgment in *Avena and other Mexican Nationals (Mex. v. U.S.)*, 2004 I.C.J. 128 (Mar. 31) ("*Avena*") )） a proceeding initiated by the Government of Mexico against the United States alleging that the United States had violated the consular notification provisions of the Vienna Convention in the case of Cardenas and 53 other Mexican nationals facing the death penalty. The ICJ concluded in *Avena* that the United States had breached its obligations under Article 36, paragraph 1(b), of the Vienna Convention by failing to inform Cardenas of his rights under this paragraph and by failing to notify the Mexican consular post of Cardenas' detention. *Avena*, paras. 106(1), (2). The ICJ concluded that "the United States also violated the obligation incumbent upon it under Article 36, paragraph 1(a), of the Vienna Convention to enable Mexican consular officers to communicate with and have access to their nationals, as well as its obligation under paragraph 1(c) of that Article regarding the right of consular

officers to visit their detained nationals." *Id*. at para. 106(3). However, the ICJ determined that in Cardenas' case, the United States did *not* breach its obligation under paragraph 1(c) to enable Mexican consular officers to arrange for legal representation of Cardenas.[3] *Id*. at para. 106(4).

The ICJ thus held that the Mexican nationals whose rights under Article 36 of the Vienna Convention were violated were entitled to full judicial review of their capital murder convictions and death sentences. *Id*. at para. 138. The ICJ mandated that the "review and reconsideration" of the case be "effective" and "'take account of the violation of the rights set forth in [the Vienna] Convention' and guarantee that the violation and the possible prejudice caused by that violation be *fully* examined". *Id*. (emphasis added). The ICJ, however, "left to the United States the choice of means as to how review and reconsideration should be achieved, especially in light of the procedural default rules. . . . [R]econsideration should occur within the overall judicial proceedings relating to the individual defendant concerned." *Id*. at para. 141. Cardenas believes that in order for this violation to be fully examined there must be an evidentiary hearing on the Vienna Convention violations evaluating his conviction and death sentence.

Cardenas' Vienna Convention claim, however, has been procedurally defaulted because he

---

[3] The ICJ discussed Cardenas' argument on the importance of consular officers being able to arrange for legal representation before and during trial, especially at sentencing due to the severity of the penalty being opposed. Mexico also argued that it could provide financial and other assistance for investigating a defendant's family background and mental condition. The ICJ observed "that the exercise of the rights of the sending State under Article 36, paragraph 1(c), depends upon notification by the authorities of the receiving State. It may be, however, that information drawn to the attention of the sending State by other means may still enable its consular officers to assist in arranging legal representation for its national. In the following cases, the Mexican consular authorities learned of their national's detention in time to provide such assistance, either through notification by United States authorities (albeit belatedly in terms of Article 36, paragraph 1(b)) or through other channels: . . . [Cardenas] . . . ." *Avena*, para.104.

failed to raise the issue at the trial stage.[4]  *See Fisher*, 169 F.3d at 300-01.  The Supreme Court held

in *Breard v. Greene* that Vienna Convention claims, like Constitutional claims, can be procedurally

defaulted, even in a death penalty case.  523 U.S. 371, 375-76 (1998).  Although *Avena* held that

procedural default rules cannot bar review of a petitioner's Vienna Convention claim, this court

cannot disregard the Supreme Court's holding in *Breard* that ordinary default rules can bar such

claims.  *See Medellin v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004), *cert. granted*, 125 S.Ct. 686

(U.S.).  "If a precedent of [the Supreme Court] has direct application in a case [. . .], the Court of

Appeals should follow the case which directly controls, leaving to [the Supreme Court] the

prerogative of overruling its own decision."  *Rodriquez de Quijas v. Shearson/Am. Exp., Inc.*, 490

U.S. 477, 484 (1989).

Even if Cardenas were not procedurally barred, his claim fails because this court has

determined in the past that the Vienna Convention does not confer individually enforceable rights.

*See Jimenez-Nava*, 243 F.3d at 198 ("The sum of [Cardenas'] arguments fails to lead to an

ineluctable conclusion that Article 36 creates judicially enforceable rights of consultation between a

detained foreign national and his consular office.  Thus, the presumption against such rights ought

to be conclusive."); *Medellin*, 371 F.3d at 280.  We are bound by this court's holding in *Jimenez-*

---

[4] Cardenas argued in his petition to the district court that his "counsel at trial failed to challenge the admissibility of his inculpatory statements on the ground that they were obtained without first advising him of his right to consular assistance under the Vienna Convention, a treaty of the United States, in violation of the Texas Code of Criminal Procedure, article 38.23."  Cardenas makes the same argument to this court.  The district court, however, treated thi s argument as an ineffective-assistance-of-counsel claim instead of a separate claim.  *Cardenas v. Cockrell*, Civil Action #M-02-180 (S.D.Tex. Aug. 18, 2003).  The district court concluded that the Vienna Convention did not create individual rights and that even if Cardenas' statements were taken in violation of the Vienna Convention, he failed to show prejudice.  *Id*.

*Nava*, the subsequent decision in *Avena* notwithstanding, until either this court sitting *en banc* or the Supreme Court says otherwise. *See United States v. Smith*, 354 F.3d 390, 399 (5th Cir. 2003).

As noted, the Supreme Court has granted *certiorari* in *Medellin*. 371 F.3d 270. However, Cardenas' case is distinguishable from *Medellin* because the ICJ determined that the United States did not violate its obligation to arrange for legal representation of Cardenas, as discussed *supra*. *Avena*, para. 106(4). Cardenas argues that the Mexican Consulate would have explained to him the significance and importance of his right to counsel, arranged to have a lawyer present, and advised him not to speak to the police outside of the presence of his lawyer. Thus, Cardenas concludes that the failure to advise him of his right to consular assistance under the Vienna Convention requires review by the district court to determine if it prejudiced the fairness of his trial. However, it is not disputed that Cardenas: (1) was given his *Miranda* warnings; (2) was advised of his right to legal representation before he confessed to killing Mayra Laguna; (3) voluntarily waived his right to advisement by an attorney; and (4) was provided with legal representation upon his request. The ICJ also determined that the Mexican consular authorities learned of Cardenas' detention in time to provide him assistance, but decided not to assist him with his legal representation. Cardenas thus fails to show that he was harmed by any lack of notification to the Mexican consulate concerning his arrest. Therefore, it is not debatable among jurists of reason whether Cardenas was prejudiced by the State's failure to advise him of his Vienna Convention right to consular assistance without delay.

IV

Cardenas has not shown that reasonable jurists could disagree with the district court's denial of any of his claims. Accordingly, we AFFIRM the district court's denial of habeas relief and DENY

12

a COA with respect to the issues raised by Cardenas.

DENNIS, Circuit Judge, specially concurring:


I concur, but I disagree with part of the majority opinion. Cardenas said that he would not have waived his Miranda rights, cooperated with the police interrogation, or given a confession had he been advised of his right to assistance by the Mexican consular officials. Consequently, I think that Cardenas made a showing that he was harmed by the state's failure to advise him of his Vienna Convention right to consular assistance without delay. Accordingly, I disagree with the majority's statement that it is not reasonably debatable whether Cardenas was prejudiced by the state's dereliction.