NUMBER 13-03-00722-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


JUAN GILBERTO HERNANDEZ GARCIA,                                      Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

                                                                                                                       


   On appeal from the 103rd District Court of Cameron County,
Texas.

                                                                                                                        

                       MEMORANDUM OPINION

 

               Before Justices Hinojosa,
Rodriguez, and Garza

                         Memorandum
Opinion by Justice Hinojosa

 








A jury found appellant, Juan Gilberto
Hernandez Garcia, guilty of the offense of murder[1]
and assessed his punishment at life imprisonment and a $10,000 fine.  In four issues, appellant contends (1) the
evidence is legally insufficient to support his conviction, (2) the evidence is
factually insufficient to support his conviction, (3) he successfully argued
the affirmative defense of self-defense, and (4) law enforcement officials
violated the Vienna Convention on Consular Relations when they failed to advise
him that he had the right to confer with the Mexican Consulate.  We affirm.

                                                   A.  Factual
Background

On March 11, 2003, appellant went to Los
Compadres Auto Sales, Inc., in Brownsville, Texas, to talk to Carlos Lerma
about money he owed appellant for transporting drugs.  When appellant arrived at the business,
Miguel Lerma, Carlos=s father, was working in the small office
located on the car lot.  It is disputed
whether Carlos was also present. 
Appellant entered the office where Miguel was working.  Words were exchanged, and an argument
ensued.    

Appellant walked out of the office, and
Miguel followed him.  The two continued
to argue.  After Miguel raised his hand
as if to slap appellant, appellant withdrew a .45 caliber handgun he was
carrying in his pants and shot Miguel five times.  Ivan Villarreal, Miguel=s employee, was working that afternoon and
witnessed portions of the altercation.  A
few moments after he heard gunshots, he went out to find Miguel on the
ground.  Villarreal called 911, and,
although paramedics responded quickly, Miguel died from the gunshot wounds.








After firing his handgun, appellant fled the
scene.  He attempted to escape north to
Houston, but at the border checkpoint, U.S. Border Patrol agents caught
appellant hiding in the trunk of his girlfriend=s car. 
Appellant was deported, but he soon returned to the United States and
traveled to Houston where he was ultimately apprehended.  Brownsville police officers went to Houston
to serve appellant with an arrest warrant and to take a statement from
him.  Appellant waived his rights to
counsel and silence and gave a statement to the officers.

            B.  Sufficiency
of the Evidence to Establish Requisite Intent

In his first and second issues, appellant
contends the evidence is legally and factually insufficient to support his
murder conviction.

                                                          1.  Standard of Review

When we review the legal sufficiency of the
evidence, we view all the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  In conducting this analysis, we may not re‑weigh
the evidence and substitute our judgment for that of the jury.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).  The standard is
the same for both direct and circumstantial evidence cases.  Kutzner v. State, 994 S.W.2d 180, 184
(Tex. Crim. App. 1999); Vela v. State, 771 S.W.2d 659, 660 (Tex. App.BCorpus Christi 1989, pet. ref'd).

We measure the legal sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would (1) accurately set out the law, (2) be authorized by
the indictment, (3) not unnecessarily increase the State's burden of proof or
restrict the State's theories of liability, and (4) adequately describe the
particular offense for which the defendant was tried.  Id. at 240; see Curry v. State, 30
S.W.3d 394, 404 (Tex. Crim. App. 2000).








When we review the factual sufficiency of
the evidence, we review all the evidence in a neutral light and set aside the
verdict only if (1) the evidence is so weak as to be clearly wrong and
manifestly unjust or (2) the verdict is against the great weight of the
evidence.  Johnson, 23 S.W.3d at
11.  We are not bound to view the
evidence in the light most favorable to the prosecution, and may consider the
testimony of all the witnesses.  Id.
at 10‑12.  Disagreeing with the
fact finder's determination is appropriate only when the record clearly
indicates that such a step is necessary to arrest the occurrence of a manifest
injustice; otherwise, due deference must be accorded to the fact finder's
determinations, particularly those concerning the weight and credibility of the
evidence.  Id.  A clearly wrong and unjust finding of guilt
is Amanifestly unjust,@ Ashocks the conscience,@ or Aclearly demonstrates bias.@  Rojas
v. State, 986 S.W.2d 241, 247 (Tex. Crim. App. 1998).

                                                              2.  Applicable Law

Under Texas law, a person commits the
offense of murder if he intentionally or knowingly causes the death of an
individual or intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual.  Tex.
Pen. Code Ann. ' 19.02(b) (Vernon 2003).  Section 6.03 of the penal code defines Aintentionally@ and Aknowingly@ as follows: 

(a)       A
person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.

 

(b)       A
person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge,
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.

 








Tex. Pen. Code Ann. ' 6.03(a), (b) (Vernon 2003).  Intent is almost always proven by
circumstantial evidence.  Manrique v.
State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (J. Meyers concurring)
(citing Robles v. State, 664 S.W.2d 91, 95 (Tex. Crim. App. 1984)).  If a deadly weapon is used in a deadly
manner, the inference is almost conclusive that the defendant intended to kill.
 Adanandus v. State, 866 S.W.2d
210, 215 (Tex. Crim. App. 1993).  In
fact, when a deadly weapon is fired at close range and death results, the law
presumes an intent to kill. Womble v. State, 618 S.W.2d 59, 64 (Tex.
Crim. App. 1981).

                                                                    3.  Analysis

In the first paragraph of count one of the
indictment, the State alleged that appellant Aon or about the 11th day of March 2003,
[did] then and there intentionally or knowingly cause the death of an
individual, namely, Miguel Lerma, by shooting Miguel Lerma with a firearm.@  See
Tex. Pen. Code. Ann. ' 19.02(b)(1) (Vernon 2003).  Thus, the State had the burden of proving
beyond a reasonable doubt that appellant intentionally and knowingly caused
Miguel=s death by shooting him with a firearm.

In the second paragraph of count one of the
indictment, the State alleged that appellant Adid then and there, with intent to cause
serious bodily injury to an individual, namely, Miguel Lerma, commit an act
clearly dangerous to human life that caused the death of said Miguel Lerma, by
shooting Miguel Lerma with a firearm.@  See
Tex. Pen. Code. Ann. ' 19.02(b)(2) (Vernon 2003).  Thus, the State had the burden of proving
beyond a reasonable doubt that appellant, with intent to cause serious bodily
injury to Miguel, shot Miguel, causing his death.








Appellant asserts the State failed to prove
all the elements of murder beyond a reasonable doubt because Athe [S]tate=s witnesses= testimony did not establish that Appellant
acted with the requisite intent . . . [or] knowingly caused the death of the
victim.@ 
Appellant admits that he shot Miguel many times, and the autopsy report
shows that Miguel died of multiple gunshot wounds.  However, appellant contends the State did not
prove that he acted with the requisite intent. 
He claims that his affirmative defense of self-defense negated the
required mens rea element.

The record shows appellant went to Miguel=s place of business with a loaded
handgun.  An eyewitness testified he saw
(1) appellant and Miguel arguing, (2) Miguel raising his hand as if to slap
appellant, and (3) appellant raising his shirt and grabbing the gun.  Two witnesses heard shots fired.  A detective testified that after
investigating the scene, police found only one firearm B a handgun located in Miguel=s office desk, inside a closed bank bag,
which had not been recently fired.  The
jury could reasonably infer that by shooting Miguel five times, appellant
specifically intended to kill him.

Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have
found beyond a reasonable doubt that appellant committed the offense of murder.[2]  See Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004).  We hold
the evidence is legally sufficient to support the jury's verdict.  Appellant's first issue is overruled.








Furthermore, after viewing the evidence in a
neutral light we conclude that the evidence supporting the verdict is not too
weak to support the jury's finding of guilt beyond a reasonable doubt, or that
the contrary evidence is strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met.  See
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004).  We hold the evidence is factually sufficient
to support the jury's verdict. 
Appellant's second issue is overruled.

                                                            C.  Self-Defense

In his third issue, appellant contends the
evidence is legally and factually insufficient to support the jury's rejection
of his self‑defense claim.   

                                                          1.  Standard of Review








In reviewing a challenge to the legal sufficiency
of the evidence to support the rejection of a self‑defense claim, we view
the evidence in the light most favorable to the prosecution to determine if any
rational trier of fact would have found beyond a reasonable doubt the essential
elements of the offense and against the appellant's self‑defense
claim.  Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). 
In reviewing a challenge to the factual sufficiency of the evidence to
support the rejection of self‑defense, we review all the evidence in a
neutral light and ask whether the State's evidence taken alone is too weak to
support the finding of guilt beyond a reasonable doubt and whether the evidence
supporting the defense is strong enough that the rejection of the claim does
not meet the beyond‑the‑reasonable doubt standard.  See Zuniga v. State, 144 S.W.3d
477, 484‑85 (Tex. Crim. App. 2004); Zuliani v. State, 97 S.W.3d
589, 595 (Tex. Crim. App. 2003).  In
conducting these reviews, we bear in mind that the fact finder may draw
reasonable inferences, is the sole judge of the weight of the evidence and
credibility of the witnesses, and may accept or reject any or all of the
evidence produced by the parties.  Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); Johnson v. State,
959 S.W.2d 284, 287 (Tex. App.BDallas 1997, pet. ref'd).

                                                              2.  Applicable Law

Self-defense serves as a justification,
excluding criminal responsibility, for otherwise criminal behavior.  Tex.
Pen. Code Ann. ' 9.31 (Vernon 2003).  A person is justified in using deadly force
against another when and to the degree he reasonably believes the force is
immediately necessary to protect himself against the other's use or attempted
use of unlawful force, if a reasonable person in the actor's situation would
not have retreated, and when and to the degree that he reasonably believes the
deadly force is immediately necessary to protect himself against the other's
use or attempted use of unlawful deadly force, or to prevent the other's
imminent commission of aggravated kidnapping, murder, sexual assault,
aggravated sexual assault, robbery, or aggravated robbery.  Tex.
Pen. Code Ann. ' 9.32(a) (Vernon 2003).

                                                                    3.  Analysis

The record contains conflicting evidence
regarding the circumstances and events surrounding Miguel=s death. 
The following evidence, relevant to appellant's claim of self‑defense,
was presented to the jury.

                                                         a.  Appellant's Testimony








Appellant testified that when he arrived at
the car lot office, he was greeted by Miguel and Carlos.  Miguel was sitting behind a desk, playing
with a gun that was laying on the desktop. 
Carlos lifted his shirt to show appellant that he was also carrying a
gun.  Appellant became afraid, explained
that he did not want the money he was owed any longer, and began backing out of
the office.  Miguel followed appellant
outside, shouting at him, and calling him names.  As appellant walked toward the front of his
vehicle, Miguel walked toward the rear of the vehicle.  Miguel told appellant that he knew too much,
and then made a movement.  Appellant
reacted quickly and fired his gun at Miguel. 
While all of this was happening, Carlos was standing by the door of the
office.  After firing his weapon at
Miguel, appellant pointed the gun at Carlos. 
Carlos dropped his gun, dropped to his knees, and asked appellant not to
shoot him.  Appellant told Carlos to
leave quickly, and Carlos did as he was told. 
Appellant then drove away, threw his gun in a Aresaca,@[3] abandoned his car, and tried to elude
authorities.

                                                                b.  Manuel Lucio

Detective Manuel Lucio, one of the officers
who first investigated the scene, performed the initial processing of the car
lot.  He noted the location of all
pertinent evidence.  Lucio testified he
found a .380 caliber handgun in Miguel=s office, located inside the desk, inside a
closed bank bag.  After checking the
handgun, Lucio opined that it had not been recently fired.  Lucio also testified he found no other
weapons on the car lot.   

                                                                 c.  Reynaldo Gil

Reynaldo Gil was the first paramedic to
arrive on the scene.  He testified that,
while securing the scene to ensure his safety, he found no weapon anywhere in
the area around Miguel=s body.

                                                                d.  Ivan Villarreal








Ivan Villarreal was employed by Miguel to
wash the cars at the car lot.  He
testified that on the day in question, appellant drove up and asked for
Carlos.  Villarreal told him that Carlos
was not present.  Appellant went inside
the office where Miguel was working. 
Standing nearby, Villarreal overheard Miguel and appellant arguing and
saw the two men walk outside toward appellant=s car. 
Villarreal then went inside the office and could no longer hear the two
men, but he could see them.  Villarreal
saw Miguel raise his hand as if to slap appellant.  Villarreal A[t]hen saw [appellant] pick up his shirt, he
took out a gun, and after that, you heard a shot.@ 
Appellant ran to his car and drove away, and Villarreal called an
ambulance.  While waiting for the
paramedics beside Miguel, Villarreal testified that there was no gun anywhere
around Miguel.

                                                       e.  Marguerite Dewitt, M.D.

Marguerite Dewitt, M.D., the medical
examiner who performed the autopsy, testified that her examination revealed
Miguel Awas shot five times, at least five times.@  Dr.
Dewitt determined that one shot was fired while Miguel was facing
appellant.  Miguel then turned to his
right and began going down, with another shot being fired at Miguel=s back.

By returning a verdict of guilty, the jury
necessarily resolved the conflicts between the evidence supporting guilt and
the evidence undermining guilt in favor of the State.  As the sole judge of the witnesses'
credibility and weight to give the testimony, the jury was free to do that, and
we will not disturb that finding.  See
Swearingen, 101 S.W.3d at 97; Johnson, 959 S.W.2d at 287.  Viewing the evidence under the appropriate
standards, we conclude the evidence is legally and factually sufficient to
support the jury's rejection of appellant's claim of self‑defense.  Appellant admitted taking a loaded weapon to
the car lot.  No weapons were found in
Miguel's hands or near his body.  The
record evidence shows Miguel was turning away from appellant, as appellant
fired five bullets into Miguel.








We hold the jury could reasonably reject
appellant's self‑defense claim since the evidence is legally and
factually sufficient to support the jury's finding beyond a reasonable doubt
that appellant acted with the requisite intent in causing Miguel=s death. 
See Gutierrez v. State, 85 S.W.3d 446, 450‑51 (Tex. App.BAustin 2002, pet. ref'd) (holding the jury
could reasonably reject defendant's self‑defense claim where defendant
admitted stabbing victim and victim was not in possession of a weapon, had
defensive wounds on hands, and stab wounds in his back).  We overrule appellant's third issue.

                                                         D.  Vienna
Accords

In his fourth issue, appellant contends that
law enforcement officials violated the Vienna Convention on Consular Relations
when they failed to advise him that he had the right to confer with the Mexican
Consulate.

                                                              1.  Applicable Law

AThe Vienna Convention on Consular Relations
grants a foreign national who has been arrested, imprisoned or taken into
custody a right to contact his consulate and requires the arresting government
authorities to inform the individual of this right >without delay.=@  Maldonado
v. State, 998 S.W.2d 239, 246‑47 (Tex. Crim. App. 1999) (citing
Vienna Convention on Consular Relations, April 24, 1963, art. 36(1)(b), 21 U.S.T.,
77, 100‑01, 595 U.N.T.S. 261, 292 (ratified by the United States on Nov.
24, 1969)).

                                                                    2.  Analysis








The United States Court of Appeals for the
5th Circuit has held that Athe Vienna Convention does not confer
individually enforceable rights.@  Cardenas
v. Dretke, 405 F.3d 244, 253 (5th Cir. 2005); see Medellin v. Dretke,
371 F.3d 270, 279 (5th Cir. 2004) (Athe Vienna Convention, as interpreted by
this Court in the past, does not confer an individually enforceable right@); United States v. Jimenez‑Nava,
243 F.3d 192, 198 (5th Cir. 2001) (AThe sum of [defendant=s] arguments fails to lead to an ineluctable
conclusion that Article 36 creates judicially enforceable rights of
consultation between a detained foreign national and his consular office.  Thus, the presumption against such rights
ought to be conclusive.  If this
conclusion suffers from any defect, however, it is beyond dispute B among the federal circuit courts B that analogizing the proffered right to
consult with Miranda rights is utterly unfounded.@).  

Similarly, the Texas Court of Criminal
Appeals has held that the Vienna Convention does not create personal rights
whose violation can be remedied in Texas courts by the suppression of evidence
under article 38.23 of the Texas Code of Criminal Procedure.  Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon 2005); Rocha v. State,
16 S.W.3d 1, 13-19 (Tex. Crim. App. 2000); Hinojosa v. State, 4 S.W.3d
240, 252 (Tex. Crim. App. 1999) (rejecting defendant=s claim that his death sentence violated the
United Nations Charter and stating, AGenerally, individuals do not have standing
to bring suit on an international treaty when sovereign nations are not
involved in the dispute.@).

Accordingly, we conclude appellant does not
have an enforceable right under the Vienna Convention.  Appellant=s fourth issue is overruled.

The judgment of the trial court is affirmed.

 

 

FEDERICO G. HINOJOSA

Justice

 

 

Do not publish. 
See Tex. R. App. P.
47.2(b).

 

Memorandum Opinion delivered and filed this

the 13th day of July, 2006.











[1] See Tex.
Pen. Code Ann. ' 19.02 (Vernon 2003).





[2] The indictment charged appellant
with murder under subsections 19.02(b)(1) and 19.02(b)(2) of the penal
code.  The jury returned a verdict
finding appellant A>GUILTY= of Murder as charged in the
indictment."  When a general verdict
is returned and the evidence is sufficient to support a finding under any of
the paragraphs submitted, the verdict will be applied to the paragraph finding
support in the facts.  Manrique v.
State, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999).





[3]
A canal-like offshoot
of the Rio Grande River.