# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-70025

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2016

Lyle W. Cayce
Clerk

RUBEN RAMIREZ CARDENAS,

Petitioner-Appellant,

versus

WILLIAM STEPHENS, Director,
 Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before SMITH, DENNIS, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ruben Ramirez Cardenas[1] applies for a certificate of appealability

---

[1] The official caption on appeal calls the petitioner Ruben Ramirez Cardenas. His application for a certificate of appealability states that "[a]lthough Petitioner has been referred to in the past as Ruben Ramírez Cardenas, the appropriate iteration of his name is Ruben Cardenas Ramírez." We avoid the inconsistency by referring to petitioner as "Cardenas."

No. 15-70025

("COA") to appeal the denial of his second federal petition for writ of habeas corpus. He claims that he is entitled to relief from his death sentence because Texas law enforcement officers did not inform him of his rights under the Vienna Convention on Consular Relations ("VCCR") after his 1997 arrest. Because no reasonable jurist could find that the claim is meritorious, we deny a COA.

I.

The facts and procedural history are recounted in exhaustive detail in several opinions describing Cardenas's long journey through the state and federal courts.[2]  In 1997, Cardenas broke into his fifteen-year-old cousin Mayra Laguna's bedroom, taped her mouth shut, tied her hands, and forced her into a car. He drove her to a secluded area and raped her, then beat her to death and left her body in a ditch. After police interrogation, Cardenas confessed. The officers did not inform him of his rights as a Mexican national under the VCCR.

Cardenas was convicted of capital murder and sentenced to death. The conviction and sentence were affirmed. *Cardenas*, 30 S.W.3d 384 at 393–94. Cardenas's initial state habeas petition was denied. *See Cardenas v. Thaler*, 651 F.3d at 447 (citing *Ex parte Cardenas,* No. 48,728–01 (Tex. Crim. App. May 16, 2001) (per curiam) (unpublished)).

Cardenas filed a federal habeas petition contending that trial counsel's failure to raise the VCCR issue rendered his performance constitutionally inadequate. The petition was denied, and the district court denied a COA. While Cardenas's appeal from that denial was pending, the International

---

[2] *See Cardenas v. State*, 30 S.W.3d 384, 386–89 (Tex. Crim. App. 2000) (reciting facts of underlying conviction on direct appeal); *Cardenas v. Thaler*, 651 F.3d 442, 447 (5th Cir. 2011) (Garza, J., dissenting) (reciting state and federal procedural history through 2011).

No. 15-70025

Court of Justice ("ICJ") issued judgment in *Avena & Other Mexican Nationals (Mex. v. U.S.),* 2004 I.C.J. 128 (Mar. 31) ("*Avena*"), which, as our court has described it, addressed

> a proceeding initiated by the Government of Mexico against the United States alleging that the United States had violated the consular notification provisions of the Vienna Convention in the case of Cardenas and 53 other Mexican nationals facing the death penalty. The ICJ concluded in *Avena* that the United States had breached its obligations under Article 36, paragraph 1(b), of the Vienna Convention by failing to inform Cardenas of his rights under this paragraph and by failing to notify the Mexican consular post of Cardenas' detention. *Avena,* paras. 106(1), (2). The ICJ concluded that "the United States also violated the obligation incumbent upon it under Article 36, paragraph 1(a), of the Vienna Convention to enable Mexican consular officers to communicate with and have access to their nationals, as well as its obligation under paragraph 1(c) of that Article regarding the right of consular officers to visit their detained nationals." *Id.* at para. 106(3). However, the ICJ determined that in Cardenas' case, the United States did *not* breach its obligation under paragraph 1(c) to enable Mexican consular officers to arrange for legal representation of Cardenas. *Id.* at para. 106(4).
>
> The ICJ thus held that the Mexican nationals whose rights under Article 36 of the Vienna Convention were violated were entitled to full judicial review of their capital murder convictions and death sentences. *Id.* at para. 138. The ICJ mandated that the "review and reconsideration" of the case be "effective" and "'take account of the violation of the rights set forth in [the Vienna] Convention' and guarantee that the violation and the possible prejudice caused by that violation be *fully* examined." *Id.* (emphasis added). The ICJ, however, "left to the United States the choice of means as to how review and reconsideration should be achieved, especially in light of the procedural default rules . . . . [R]econsideration should occur within the overall judicial proceedings relating to the individual defendant concerned." *Id.* at para. 141.

*Cardenas v. Dretke,* 405 F.3d 244, 252 (5th Cir. 2005) (footnote omitted) (alteration in original).

This court determined that, *Avena* notwithstanding, the VCCR claim was both procedurally defaulted and meritless. *Id.* at 252–54. On the merits,

we first held that the VCCR creates no judicially enforceable individual rights. *Id.* at 252–53. And second, we held that, even if Cardenas's rights were violated in some judicially redressable fashion, he was not prejudiced. *Id.* at 253–54. We further concluded that reasonable jurists could not debate those determinations, so we declined to issue a COA. *Id.* at 254.

In the wake of *Avena* (but after briefing in the aforementioned appeal), the President issued a memorandum (the "Presidential Memorandum") purporting to direct state courts to comply fully with *Avena*'s requirement that the covered individuals receive full reconsideration of their cases without regard to ordinary state-law procedural bars. Cardenas filed a new state habeas petition, seeking relief on the basis of *Avena* and the Presidential Memorandum. That petition was dismissed as an abuse of the writ. *Ex parte Cardenas*, No. WR-17,425-05, 2007 WL 678628, at *1 (Tex. Crim. App. Mar. 7, 2007).

Cardenas then filed the federal habeas petition now at issue. This court stayed that proceeding pending the Supreme Court's decision in *Medellin v. Texas*. That Court held that, even though the VCCR and *Avena* had created binding international-law obligations on the federal government, neither they nor the Presidential Memorandum created any binding domestic obligation on the states. *See Medellin v. Texas*, 552 U.S. 491, 522–23, 532 (2008). After *Medellin*, the Secretary of State and the Attorney General wrote the Texas governor asking for his help in implementing American treaty obligations under the VCCR and *Avena*. The governor replied that Texas would ask federal habeas courts to review prejudice claims on the merits for any person who had not yet received a prejudice determination on his VCCR claim.

In September 2008, the district court dismissed Cardenas's petition for want of jurisdiction because he had not received permission to file a successive petition; the district court never ruled on whether a COA should issue.

Between the dismissal and Cardenas's appeal of that order, this court issued *Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009). There we held that a second habeas petition raising *Avena* and VCCR claims in conjunction with the Presidential Memorandum was not successive within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") if the initial petition was denied before the Presidential Memorandum was issued. *Id.* at 223–24. In *Leal Garcia* we also concluded that *Medellin* rendered Leal Garcia's VCCR claim meritless because neither the VCCR nor *Avena* imposed binding obligations on the states. *Id.* at 224.

On Cardenas's appeal, we remanded on the narrow question whether a COA should issue, without addressing the impact of *Leal Garcia*. *Cardenas*, 651 F.3d at 447. On remand, Cardenas moved for relief from the judgment of dismissal under Federal Rule of Civil Procedure 60(b). He noted that *Leal Garcia* had clarified that his second habeas petition was not successive within the meaning of AEDPA, so the judgment of dismissal on that basis was error. The district court granted the motion and allowed Cardenas to file an amended habeas petition.

That amended petition maintained that Cardenas's rights under the VCCR had been violated, that he suffered prejudice, and that the combination of the VCCR, *Avena*, the Presidential Memorandum, the governor's letter, an opinion of another circuit, and decisions of various foreign courts entitled him to relief from his sentence. The district court denied the petition. It held that Cardenas's VCCR claim was procedurally defaulted, opining that the Texas Court of Criminal Appeals' denial of the second state habeas motion rested on an independent and adequate state bar to relief. The court further decided, in the alternative, that the VCCR claim was meritless. The court reasoned that *Medellin* and *Leal Garcia* had foreclosed any relief because they reaffirmed the

5

No. 15-70025

Fifth Circuit's longstanding view that neither *Avena* nor the VCCR produced any individually enforceable rights. The court also determined that reasonable jurists would not debate its denial of habeas relief, and it thus refused to issue a COA.

## II.

Under AEDPA, a COA is a prerequisite to appeal the denial of a habeas petition. 28 U.S.C. § 2253(c)(1)(A). The petitioner must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and must show that the accuracy of the district court's conclusions is subject to debate among jurists of reason, *see Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003). In the death-penalty context, any doubts as to entitlement to a COA are resolved in the petitioner's favor. *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004) (per curiam).

The district court made two alternative holdings: first that Cardenas's claim was procedurally defaulted, and second that, even if it was not, the claim was meritless. Thus, Cardenas must show *both* that jurists of reason could debate the validity of the procedural default ruling *and* that those same jurists could debate the validity of the merits ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Cardenas's claim easily fails on the merits, we need not address the procedural-default ruling. We therefore assume, without deciding, that the Texas Court of Criminal Appeals' dismissal was based on the merits of Cardenas's claim.[3]

Because Cardenas advanced a legal claim rather than a factual claim,

---

[3] Because we assume for the sake of argument that the merits are properly before this court, we need not decide what force—if any—to accord the governor's letter promising not to oppose merits review. Even if Cardenas is correct that the letter binds the state (which we doubt), the letter, at most, would be a waiver of the state's procedural-default arguments that would force the state to defend the merits.

No. 15-70025

our review of this habeas petition is governed by 28 U.S.C. § 2254(d)(1), which states that we may grant relief only if the Texas judgment "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." The Supreme Court, just this Term, reminded that it

> time and again[ ] has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt* v. *Titlow*, 571 U. S. ___, ___, 134 S. Ct. 10, 16 . . . (2013). Under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White* v. *Woodall*, 572 U. S. ___, ___, 134 S. Ct. 1697, 1702 . . . (quoting *Harrington* v. *Richter*, 562 U. S. 86, 103 . . . (2011)).

*White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (per curiam).

Federal habeas review under AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim. *See Renico v. Lett*, 559 U.S. 766, 773 (2010). Further, *only* the authoritative pronouncements of the Supreme Court qualify as clearly established law; our own cases and those of our sister circuits cannot serve as the basis for habeas relief if not squarely backed by that higher authority. *See id.* at 779.

## III.

The district court correctly concluded that Cardenas's VCCR claim was meritless. Cardenas theorizes that the failure of Texas law enforcement authorities to comply with the VCCR prejudiced his defense and that therefore

7

he is entitled to relief for that violation of his rights under the treaty. He bolsters that notion by reference to a wide variety of international law sources, the Presidential Memorandum, a decision from one of our sister circuits, and the views of foreign courts. But, tellingly, he cites no Supreme Court precedent for the proposition that *Avena*, the VCCR, or various decisions by international and foreign tribunals give rise to judicially enforceable individual rights cognizable on federal habeas review under AEDPA. That is because there is no such authority, and its absence is fatal, because on federal habeas review we may disturb a state conviction only if Supreme Court precedent so dictates.

Recognizing that principle, this court has rejected claims materially indistinguishable from Cardenas's. *Medellin* and several of our decisions foreclose any relief on the basis of the theories that Cardenas advances.

*Medellin* rejects most of the arguments in Cardenas's petition, holding that *Avena* had no force as domestic law. The petitioner claimed that the Optional Protocol Concerning the Compulsory Settlement of Disputes to the Vienna Convention ("Optional Protocol"),[4] the United Nations Charter, and the International Court of Justice Statute together served to render *Avena* directly enforceable as domestic federal law. The Court rejected that contention because those treaties were not self-executing[5] and Congress had not passed implementing legislation incorporating them into domestic law. *Medellin*,

---

[4] The Optional Protocol is a related treaty that "provides a venue for the resolution of disputes arising out of the interpretation or application of the Vienna Convention." *Medellin*, 552 U.S. at 499. It vests compulsory jurisdiction for such disputes in the ICJ. *Id.*

[5] American courts have "long recognized the distinction between treaties that automatically have effect as domestic law, and those that—while they constitute international law commitments—do not by themselves function as binding federal law." *Medellin*, 552 U.S. at 505. A treaty that explicitly conveys an intention that it should "self-execute" upon ratification without additional implementing legislation takes force as domestic law at the time of ratification. *Id.* A treaty that does not evince such executory intentions is non-self-executing, and does not take force absent an implementing statute. *Id.*

552 U.S. at 506. Nor did the President have the power to transform those non-self-executing treaties into binding domestic law by issuing the Presidential Memorandum: The Constitution vests Congress, not the President, with the legislative powers necessary to convert a non-executory international obligation into domestic law. *Id.* at 527. Thus, neither *Avena* nor the Presidential Memorandum is enforceable federal law that binds the states to behave in accordance with their dictates or allow courts to enforce rights thereunder.

As Cardenas correctly notes, the Supreme Court expressly reserved the question whether the VCCR is self-executing or gives rise to any judicially cognizable individual rights. *Id.* at 506 n.4. But he is wrong to think that this helps his argument: The fact that the Court has not found an individually enforceable right means that, under § 2254(d)(1), we cannot grant relief, because such a right is not part of clearly established federal law as determined by the Supreme Court. Further, this court has repeatedly held that the VCCR does not give rise to individual rights.[6] The VCCR itself is thus of no more help to Cardenas than is *Avena* or the Presidential Memorandum. None of these purported sources of law can serve as the basis for habeas relief. Indeed, this court has already said as much in a near-identical appeal. *See Leal Garcia*, 573 F.3d at 218–19.[7]

---

[6] *See Rocha v. Thaler*, 619 F.3d 387, 407 (5th Cir.), *clarified on denial of reconsideration,* 626 F.3d 815 (5th Cir. 2010); *Leal Garcia*, 573 F.3d at 218 n.19; *Cardenas v. Dretke*, 405 F.3d 244, 253 (5th Cir. 2005); *Medellin*, 371 F.3d at 280; *United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001).

[7] Cardenas does not even mention *Leal Garcia* in his opening brief, and his attempts to distinguish it in his reply brief are unpersuasive. The only point of distinction that he raises is the fact that he is relying on the power of a federal court to remedy violations of a treaty through habeas review under 28 U.S.C. § 2254(a). But that does not help him. That provision does not grant federal courts free-ranging authority to remedy treaty violations without regard to the rest of the AEDPA framework any more than it gives them unbounded authority to police constitutional violations. Section 2254(d)(1) still governs. We may grant relief only on the basis of the decisions of the Supreme Court, which has not announced an individual right under the VCCR. Thus, we may not recognize an individual right under the

No. 15-70025

Cardenas's reliance on various other judgments of international tribunals—including subsequent ICJ declarations and a report issued by the Inter-American Commission on Human Rights ("IACHR")—is similarly unavailing. The more recent ICJ decisions not directly addressed in *Medellin* provide no basis for relief for precisely the same reason that the ICJ decision at issue in *Medellin* did not do so: ICJ decisions do not become domestic law absent a Congressional enactment.

Nor does the IACHR decision give rise to a cognizable claim for relief. Although this circuit has not squarely addressed the question, every federal court of appeals that has done so has concluded that IACHR decisions do not have domestic legal force.[8] Cardenas cites no authority to the contrary and does not even advance a reasoned argument for the proposition that IACHR determinations should be accorded any status in the U.S. legal system. And even if we were inclined to think that IACHR decisions should be accorded domestic legal force, we could not announce that novel rule in a habeas case. *See Tamayo*, 740 F.3d at 996–98. Cardenas's reliance on decisions from our sister circuits and foreign courts is also misplaced for the obvious reason that none of those is a decision of the Supreme Court, so arguments predicated on them cannot satisfy § 2254(d)(1). *See Salazar v. Dretke*, 419 F.3d 384, 399 (5th Cir. 2005).

Cardenas's brief concludes by asking that, even if circuit precedent rejects his core claim, we grant a COA to reconsider *Jimenez-Nava.* Cardenas posits that the (purportedly) unique constellation of factors present here

---

VCCR on habeas review (and have so held). *See Maldonado v. Thaler*, 389 F. App'x 399, 404 (5th Cir. 2010); *Flores v. Johnson*, 210 F.3d 456, 458 (5th Cir. 2000).

[8] *See Tamayo v. Stephens*, 740 F.3d 991, 997 (5th Cir. 2014) (per curiam) (citing *Flores–Nova v. Attorney Gen. of U.S.,* 652 F.3d 488, 493 (3d Cir. 2011); *In re Hicks,* 375 F.3d 1237, 1241 n.2 (11th Cir. 2004); *Garza v. Lappin,* 253 F.3d 918, 924–25 (7th Cir. 2001)).

warrants reconsideration.  But, in the absence of intervening Supreme Court authority, we will not issue a COA in anticipation of en banc rehearing of a past decision.  *See Rocha*, 619 F.3d at 407–08.  There is no intervening authority.  And, contrary to Cardenas's supposition, the procedural footing of this case (federal habeas) does not favorably distinguish it from *Jimenez-Nava*.  As we have repeated herein, a habeas court is prohibited from granting relief on the basis of heretofore unannounced rules of law.

The application for a COA is DENIED.

11