# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 22, 2011

No. 08-70043

Lyle W. Cayce
Clerk

RUBEN RAMIREZ CARDENAS,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:07-CV-53

Before GARZA, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:*

The Petitioner, Ruben Ramirez Cardenas, appeals the district court's dismissal of his 28 U.S.C. § 2254 application as an unauthorized successive habeas petition. Under the Antiterrorism and Effective Death Penalty Act, a certificate of appealability ("COA") is necessary to proceed with this appeal. *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ."); *see also Resendiz v. Quarterman*, 454 F.3d 456, 458 (5th Cir. 2006) ("'[A] district court's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

dismissal of a motion on the ground that it is an unauthorized successive collateral attack constitutes a final order within the scope of 28 U.S.C. § 2253(c), and therefore a certificate of appealability is required.'" (alteration in original) (quoting *Sveum v. Smith*, 403 F.3d 447, 448 (7th Cir. 2005))).

However, the district court did not rule upon whether a COA is warranted, and "the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal." *Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1998); *see also Brewer v. Quarterman*, 475 F.3d 253, 255 (5th Cir. 2006) (per curiam) ("A district court must deny the COA before a petitioner can request one from this court. A request for COA must be filed in the district court before such a request can be made in the circuit court." (internal quotation marks omitted)); *Miller v. Dretke*, 404 F.3d 908, 912 (5th Cir. 2005) ("Under Federal Rule of Appellate Procedure 22(b)(1), the district court must first decide whether to grant a COA request before one can be requested here."); *Sonnier v. Johnson*, 161 F.3d 941, 946 (5th Cir. 1998) ("[T]he lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal."); *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997) ("Under *Muniz* [*v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997)], jurisdiction is not vested in this Court because the district court has not yet considered whether [a] COA should issue."); *Muniz*, 114 F.3d at 45 ("A district court must deny the COA before a petitioner can request one from this court."). Accordingly, we lack jurisdiction to consider this appeal and therefore, we must remand to the district court to consider in the first instance whether to grant or deny a COA.

It does not affect our judgment that the jurisdictional rule laid down in the cases cited is grounded in a portion of Rule 22 of the Federal Rules of Appellate Procedure that was removed in 2009. *See* Supreme Court Order of March 26, 2009, *available at* http://www.supremecourt.gov/orders/courtorders/frap09.pdf. That provision read: "If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or

state the reasons why such a certificate should not issue." Fed. R. App. P. 22(b) (2008).[1]    This appeal was commenced before the 2009 amendments were effective, and these amendments apply to pending appeals, such as this, only "insofar as just and practicable." *See* Supreme Court Order of March 26, 2009. We conclude that it would not be just and practicable to apply the amended rules in this case.[2]  At the time this case was heard and decided in the district court, the rules preceding the 2009 amendments were still in effect—that is, the pertinent rule was found in Rule 22 of the Federal Rules of Appellate Procedure and was not, as it is now, consolidated with the other Rules Governing Section 2254 Cases.  Accordingly, the parties and the district court did not have the benefit of the 2009 amendments.  Further, the parties have not briefed whether the 2009 amendments affect our jurisdictional rule based on former Rule 22. Therefore, we conclude that this case is governed by Rule 22 of the Federal Rules of Appellate Procedure as it existed before the 2009 amendments.

---

[1] As part of the 2009 amendments, the requirement that the district court first decide whether to grant or deny a COA was moved from Rule 22 of the Federal Rules of Appellate Procedure to Rule 11(a) of the Rules Governing § 2254 Cases.  *See* Fed. R. App. P. 22 advisory committee's note to 2009 amendments; Rule 11(a), Rules Governing Section 2254 Cases, 28 U.S.C.A. foll. § 2254 (2011) ("The district must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The Federal Rules Advisory Committee noted that the purpose of consolidating the rule among the other federal rules for habeas cases was to: (1) "make[] the requirements concerning COAs more prominent by adding and consolidating them in the appropriate rule of the Rules Governing § 2254 Cases in the United States District Courts," and (2) "require[] the district judge to grant or deny the certificate at the time a final order is issued."  Rule 11, Rules Governing Section 2254 Cases, advisory committee's note to 2009 amendments.

[2] It is not clear that applying the amended rules would affect our decision that we are without jurisdiction to consider whether to grant or deny a COA in the first instance.  Even after the 2009 amendments became effective, another panel of this court decided to follow this well-established jurisdictional rule of our circuit.  *See United States v. Fisher*, 372 F. App'x 526, 528 (5th Cir. 2010) (per curiam) (unpublished) ("[T]his court lacks jurisdiction over Fisher's appeal absent a certificate of appealability (COA) ruling in the district court." (citing *Youngblood*, 116 F.3d at 1114-15)).  However, because we conclude that the former version of Rule 22 governs this case, we need not decide whether the 2009 amendments affect our jurisdictional rule.

Our precedents have held, unequivocally, that under former Rule 22, "*the lack of a ruling* on a COA *in the district court* causes this court to be without jurisdiction to consider the appeal." *Sonnier*, 161 F.3d at 946 (emphases added); *see also Brewer*, 475 F.3d at 255; *Whitehead*, 157 F.3d at 388; *Youngblood*, 116 F.3d at 1115.[3] That is, our cases have all said that it is the absence of a ruling on the COA in the district court, and not merely the absence of a COA itself, which deprives us of appellate jurisdiction. In *Muniz*, we explained the sensible rationale for having the district courts first decide whether a COA should issue:

> The rule contemplates that the district court will make the first judgment whether a COA should issue and on which issues, and that the circuit court will be informed by the district court's determination in its own decisionmaking.
> . . . .
> [W]e are cognizant of the district court's superior familiarity with this habeas petition. Its considerable experience with this case should allow it accurately to determine which issues satisfy the COA requirement.

114 F.3d at 45. While *Muniz* dealt with a slightly different scenario than this case—the district court there had issued a Certificate of Probable Cause, which,

---

[3] The dissent acknowledges, as it must, that "under Rule 22, the lack of a district court determination [on a COA] does indeed cause us to be without jurisdiction," but, nonetheless contends that "that proposition does not require us to assume that Rule 22 creates an independent jurisdictional bar." Dissent Op. 7. The dissent avoids the fact that all of our prior cases have specified that it was the lack of a ruling on the COA in *the district court*, and not simply the lack of a COA, that deprives us of jurisdiction. *Brewer*, 475 F.3d at 255 ("*A district court* must deny the COA before a petitioner can request one from this court. A request for COA must be filed *in the district court* before such a request can be made in the circuit court." (emphasis added) (internal quotation marks omitted)); *Miller*, 404 F.3d at 912 ("Under [Rule] 22(b)(1), *the district court* must first decide whether to grant a COA request before one can be requested here." (emphasis added)); *Sonnier*, 161 F.3d at 946 ("[T]he lack of a ruling on a COA *in the district court* causes this court to be without jurisdiction to consider the appeal." (emphasis added)); *Whitehead*, 157 F.3d at 388 ("[T]he lack of a ruling on a COA *in the district court* causes this court to be without jurisdiction to consider the appeal." (emphasis added)); *Youngblood*, 116 F.3d at 1115 ("Under *Muniz*, jurisdiction is not vested in this Court because *the district court* has not yet considered whether [a] COA should issue." (emphasis added)); *Muniz*, 114 F.3d at 45 ("*A district court* must deny the COA before a petitioner can request one from this court." (emphasis added)). If the dissent is correct then it is inexplicable why, in all of those prior cases we held that we lacked jurisdiction and thus, had to remand to the district court, when we could have simply decided the COA ourselves in the first instance.

4

unlike a COA, did not require the court to specify particular issues for appeal, and "deciding the COA issue ourselves risk[ed] inconsistent adjudication," *id.*—our subsequent decisions in *Youngblood*, *Whitehead*, *Sonnier*, and *Brewer* all involved the same situation presented here, *viz.*, whether we can rule on an application for a COA in the first instance. *See Brewer*, 475 F.3d at 255; *Whitehead*, 157 F.3d at 388; *Sonnier*, 161 F.3d at 945-46; *Youngblood*, 116 F.3d at 1115. All of those decisions concluded that the absence of a prior determination by the district court on whether a COA should issue posed a jurisdictional bar to this court's consideration of whether to grant or deny a COA. *Brewer*, 475 F.3d at 255; *Whitehead*, 157 F.3d at 388; *Sonnier*, 161 F.3d at 945-46; *Youngblood*, 116 F.3d at 1115. Accordingly, we are bound by those decisions to reach the same conclusion. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("It is a firm rule of this circuit that in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court, a panel cannot overrule a prior panel's decision." (citing *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998)).

The Respondent contends that we can apply Rule 2 of the Federal Rules of Appellate Procedure to avoid the jurisdictional requirement of former Rule 22. We disagree. Rule 2 allows "a court of appeals . . . [to] suspend any provision of the[] [Federal Rules of Appellate Procedure] in a particular case." Fed. R. App. P. 2. However, the Respondent cites no authority, and we are aware of none, that has held that Rule 2 allows us to suspend a jurisdictional requirement of the Federal Rules of Appellate Procedure. Indeed, in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988), the Supreme Court addressed a closely related question and held that "[a court of appeals] may not waive the jurisdictional requirements of Rules 3 and 4 [of the Federal Rules of Appellate Procedure], even for 'good cause shown' under Rule 2, if it finds that they have not been met." *Id.* at 317. Likewise, at least two of our sister courts of appeals have held that Rule 2 does not permit avoiding jurisdictional requirements. *See,*

*e.g.*, *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 n.9 (3d Cir. 1999) ("We are, of course, mindful of the fact that the authority of Rule 2 cannot be utilized to expand the jurisdiction of the Court." (citing *Torres*, 487 U.S. at 315)); *Dura Sys., Inc. v. Rothbury Invs., Ltd.*, 886 F.2d 551, 555 (3d Cir. 1989) (citing *Torres*, 487 U.S. at 317, for the proposition that "jurisdictional requirements may not be waived, even for 'good cause shown' under Rule 2"); *United States v. Stemm*, 835 F.2d 732, 734 (10th Cir. 1987) ("We interpret [Rule 2] to establish the basis of expedited proceedings in appropriate cases, excepting any action affecting appellate court jurisdiction."). The several cases cited by the Respondent are all inapposite because they did not involve the application of Rule 2 to suspend a jurisdictional rule. *See United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000) (holding first that Rule 22 was not a jurisdictional requirement, and then relying on Rule 2 to avoid former Rule 22 and consider the COA despite the fact that the district court had not first ruled on it); *United States v. Sylvester*, 143 F.3d 923, 935 n.12 (5th Cir. 1998) (relying on Rule 2 to construe an argument that had been raised by only one defendant-appellant as having been adopted by a co-defendant-appellant); *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1161-63 (5th Cir. 1969) (upholding "this Court's power under FRAP Rule 2 to summarily dispose of the appeal" without oral argument). Accordingly, we remain unpersuaded that Rule 2 allows us to avoid the jurisdictional requirement of former Rule 22.

The decisions of the other circuits that have considered a COA without a prior ruling by the district court are similarly inapposite because those circuits did not have binding precedent, as we do, that a COA ruling by the district court was a prerequisite to the appellate court's jurisdiction. *See Sassounian v. Roe*, 230 F.3d 1097, 1101 n.1 (9th Cir. 2000); *Mitchell,* 216 F.3d at 1130; *Williams v. United States*, 150 F.3d 639, 640-41 (7th Cir. 1998). Moreover, the Seventh Circuit's decision in *Williams* and the Ninth Circuit's decision in *Sassounian* involved suspending only a local circuit rule, and *not* one of the congressionally-

No. 08-70043

approved Federal Rules of Appellate Procedure.[4]    In *Williams*, the Seventh Circuit itself noted that this difference was crucial to its decision: "[A] court of appeals is entitled to make exceptions to its norms (see Circuit Rule 2), *a power we lack when interpreting an Act of Congress*."    150 F.3d at 640-41 (emphasis added).    And, in avoiding its own local rule, the Ninth Circuit in *Sassounian* relied exclusively on the Seventh Circuit's *Williams* decision.    *See Sassounian*, 230 F.3d at 1101 n.1.    Therefore, neither of those decisions purport to address the question here: whether we have the authority under Rule 2 to avoid a jurisdictional rule established by one of the Federal Rules of Appellate Procedure.

For the foregoing reasons, we REMAND the case to the district court for the limited purpose of considering whether a COA should issue.

---

[4] When the Supreme Court promulgates the Federal Rules of Appellate Procedure pursuant to 28 U.S.C. § 2072, it must transmit them to Congress.    *See* 28 U.S.C. § 2074. Congress, in turn, signals its approval of the Supreme Court's proposed rules by inaction.    *See* David D. Siegel, *Submitting the Rules to Congress*, Commentary on 1988 Revision to 28 U.S.C. § 2074 ("The procedure for Congressional approval remains passive.    Inertia means approval. If Congress does nothing within the seven-month period stipulated by the statute, the new rules go into effect.").

EMILIO M. GARZA, Circuit Judge, dissenting.

This case is about our jurisdiction to grant or deny a certificate of appealability when a district court has failed to grant or deny one first. Under Rule 22 of the Federal Rules of Appellate procedure—or at least, under the version of the Rule in effect when this appeal began—"the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal." *Sonnier v. Johnson*, 161 F.3d 941, 946 (5th Cir. 1998). On this much, the majority and I agree. But the majority takes that rule to mean that a prior district court COA ruling is a jurisdictional requirement in and of itself—a requirement that cannot be remedied by suspending Rule 22 and issuing our own COA. As I read our cases, Rule 22 does not establish an independent jurisdictional bar, but rather prevents us from remedying a preexisting jurisdictional defect—the lack of a COA. I would exercise our authority under Rule 2 of the Rules of Appellate Procedure to suspend the relevant portion of Rule 22 and would deny COA. I therefore must dissent.

## I

The facts of this case are discussed extensively elsewhere. In short, Ruben Ramirez Cárdenas ("Ramirez Cárdenas") was arrested and questioned regarding the murder of his cousin, Mayra Laguna. Although Ramirez Cárdenas is a Mexican national, he was not informed that he had a right to consular access under the Vienna Convention on Consular Relations ("VCCR"). He was convicted of capital murder and sentenced to death. His conviction and sentence were affirmed, and his initial state application for habeas corpus was denied. *Cárdenas v. State*, 30 S.W.3d 384 (Tex. Crim. App. 2000); *Ex parte Cárdenas*, No. 48,728-01 (Tex. Crim. App. May 16, 2001) (per curiam) (unpublished). He then filed his initial federal application for writ of habeas corpus, which included an ineffective assistance of counsel claim alleging that trial counsel erred in failing to raise the potential VCCR violation. The petition was dismissed. *Cárdenas v.*

*Cockrell*, No. 7:02-CV-180, 2003 WL 24057305, at *14-15 (S.D. Tex. Sept. 25, 2003).

Ramirez Cárdenas was included among the Mexican nationals named in a case brought by Mexico against the United States in the International Court of Justice ("ICJ") alleging numerous violations of the VCCR. *Case Concerning Avena & Other Mexican Nat'ls (Mex. v. U.S.)*, 2004 I.C.J. 12 (March 31) ("*Avena*"). The ICJ held that the United States had violated its VCCR obligations with regard to Ramirez Cárdenas and fifty others. *Id.* ¶¶ 90, 106. The ICJ concluded that the "appropriate reparation . . . consists in the obligation of the United States of America to provide, by means of its own choosing, review and reconsideration of the convictions and sentences of the Mexican nationals" named in the judgment. *Id.* ¶ 153(9). In response, President George W. Bush issued a memorandum ("the President's Memorandum") stating that he had determined, pursuant to his authority as President, that the United States would discharge its obligations under *Avena* by having state courts "give effect to the decision in accordance with general principles of comity in cases filed by the 51 Mexican nationals addressed in that decision."

At the time, Ramirez Cárdenas's request for a COA from the district court's denial of his initial habeas petition was pending in this court. We affirmed the denial of habeas relief and denied a COA on his VCCR claim, concluding that Ramirez Cárdenas's claim was without merit because the VCCR did not give rise to individually enforceable rights. *Cárdenas v. Dretke*, 405 F.3d 244, 252-54 (5th Cir. 2005). Ramirez Cárdenas sought subsequent state habeas relief, but his application was dismissed as successive. He then filed the federal petition at issue in this case, citing *Avena* and the President's Memorandum. While the petition was pending, the Supreme Court issued its opinion in *Medellín v. Texas*, rejecting arguments that either *Avena* or the President's Memorandum constitute binding domestic law capable of pre-empting state procedural requirements. 552 U.S. 491, 522-23, 532 (2008). Shortly thereafter,

the U.S. Attorney General and Secretary of State wrote to the Governor of Texas requesting that Texas take the steps necessary to give effect to *Avena*. The Governor sent a letter of reply detailing the State's approach to *Avena* issues.

The district court dismissed Ramirez Cárdenas's petition for lack of jurisdiction because Ramirez Cárdenas had failed to obtain permission to file a successive petition. Ramirez Cárdenas filed a notice of appeal to this court. Thereafter, the ICJ issued a judgment (1) declining Mexico's request for interpretation of its ruling in *Avena*, (2) finding that the United States violated its *Avena* obligations with regard to the prisoner at issue in *Medellín*, (3) reaffirming the binding nature of *Avena*, and (4) declining to order the United States to provide guarantees of non-repetition. *Request for Interpretation of the Judgment of 31 March 2004 in the Case Concerning Avena & Other Mexican Nat'ls (Mex. v. U.S.)*, Judgment,¶61(1)-(4) (Jan. 19, 2009), *available at* http://www.icj-cij.org/docket/files/139/14939.pdf. Several months later, we issued our opinion in *Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009), addressing many of the issues raised here.

## II

The majority is correct that we do not have jurisdiction to consider the merits of this appeal. "[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Carty v. Thaler*, 583 F.3d 244, 266 (5th Cir. 2009)*; Holland v. Anderson*, 583 F.3d 267, 285 n.13 (5th Cir. 2009). "'[A] district court's dismissal of a motion on the ground that it is an unauthorized successive collateral attack constitutes a final order within the scope of 28 U.S.C. § 2253(c), and therefore a certificate of appealability is required.'" *Resendiz v. Quarterman*, 454 F.3d 456, 458 (5th Cir. 2006) (per curiam) (quoting *Sveum v. Smith*, 403 F.3d 447, 448 (7th Cir. 2005)). When this case came to us, then, we lacked appellate jurisdiction to consider it on the merits—just as we would have if the district court had denied a COA.

The question before us at the moment, though, is not whether we have jurisdiction to consider the case on the merits, but whether we have jurisdiction to consider whether a COA should issue.  It has always been the case that, even where we lack jurisdiction to consider an appeal on the merits, we retain jurisdiction to determine our own jurisdiction.  *See Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010) (citing *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir.2009)).  Similarly, the absence of a district court grant of a COA does not prevent us from considering whether to grant a COA ourselves.  *See* 28 U.S.C. § 2253(c)(1) (permitting a "circuit justice or judge" to grant a COA).  As the majority rightly points out, though, we have held that the district court's failure to consider a COA—that is, its failure to rule one way or the other—prevents us from doing so ourselves.  *See, e.g., Brewer v. Quarterman*, 475 F.3d 253, 255 (5th Cir. 2006) (per curiam); *Sonnier v. Johnson*, 161 F.3d 941, 945-46 (5th Cir. 1998) (per curiam); *Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1998) (per curiam); *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997) (per curiam).  None of the cases on which the majority relies, however, address whether Rule 2 of the Rules of Appellate Procedure might, in select  circumstances, permit us to suspend the requirement that the district court make the initial COA determination and make our own COA ruling instead.[1]

The majority does not seem to dispute that, under our precedents, the prior consideration requirement is—or, at least until recently,[2] was—a feature

---

[1]  Rule 2 permits a court of appeals "to expedite its decision or for other good cause[ ] suspend any provision of [the Rules of Appellate Procedure] in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)."

[2]  The Rule 22 language relied upon by *Muniz* was removed by an amendment to the Rules of Appellate Procedure effective December 1, 2009.  *See* Supreme Court Order of March 26, 2009.  At the same time, however, the Supreme Court added a new version of Rule 11 to the Rules Governing § 2254 Cases ("Habeas Rule 11"), which requires, *inter alia*, that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The advisory committee note to Rule 22 explains the relationship

of the Rules of Appellate Procedure, specifically Rule 22. The requirement would therefore seem to fall within the textual scope of Rule 2. The majority nevertheless concludes that Rule 2 is not available because the district court's failure to rule on the COA presents a jurisdictional bar, and Rule 2 does not permit us to suspend a jurisdictional requirement. Based on my review of our case law, however, whether the "prior district court consideration" requirement is jurisdictional is not the open-and-shut case the majority makes it out to be. Our precedents recognizing this requirement can be traced to *Muniz v. Johnson*, in which we interpreted the version of Rule 22 in effect at the time to require that:

> A district court must deny the COA before a petitioner can request one from this court. The rule contemplates that the district court will make the first judgment whether a COA should issue and on which issues, and that the circuit court will be informed by the district court's determination in its own decisionmaking.

114 F.3d 43, 45 (5th Cir. 1997). We listed three reasons, other than the text of Rule 22, for our holding: first, that "deciding the COA issue ourselves risks inconsistent adjudication," because the district court had already acted under pre-AEDPA certificate of probable cause ("CPC") procedures and our consideration of the same issues under the rubric of a COA might create a conflict; next, that the district court possessed "superior familiarity with th[e] habeas petition" in light of "[i]ts considerable experience with th[e] case;" and

---

between the two amendments as follows: "The requirement that the district judge who rendered the judgment either issue a certificate of appealability or state why a certificate should not issue has been deleted from subdivision (b)(1). Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2254 or § 2255 now delineates the relevant requirement." It would seem, then, that at the very least the source of the prior consideration requirement has changed since Ramirez Cárdenas first filed this appeal in 2008. Nevertheless, I agree with the majority that we should apply the version of Rule 22 in effect prior to the 2009 amendments. The amendments apply to pending cases only "insofar as just and practicable." Supreme Court Order of March 26, 2009; *see also* 28 U.S.C. § 2074(a). It would be unjust and impracticable to change, at so late a date, the procedural framework on which the parties relied. Like the majority, I express no opinion with regard to the effect of these amendments on the continued vitality of the *Muniz* line of cases.

finally, "that two of our sister circuits [(the Seventh and Sixth)] ha[d] taken the same action in almost identical situations." *Id.* at 45-46. None of the rationales so much as mention our jurisdiction.

The language of jurisdiction, however, did quickly find its way into our jurisprudence on this issue. In *Whitehead v. Johnson*, for example, the district court dismissed the prisoner's application for failure to exhaust state remedies and denied his request for a COA; we reversed the holding that he failed to exhaust his state claim, and we remanded for reconsideration on the merits, observing that we had appellate "jurisdiction to consider whether to grant or deny a COA on the issue of exhaustion only, because that is the only issue addressed in the district court's COA determination." 157 F.3d at 386-88. And, of course, we issued the numerous opinions relied upon by the majority suggesting that the lack of a district court COA ruling causes us to be without jurisdiction. *See Sonnier*, 161 F.3d at 945-46 ("Compliance with the COA requirement of 28 U.S.C. § 2253(c) is jurisdictional, and the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal."); *Whitehead*, 157 F.3d at 388 ("Compliance with the COA requirement of 28 U.S.C. § 2253(c) is jurisdictional, and the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal."); *Youngblood*, 116 F.3d at 1115 (5th Cir. 1997) ("[J]urisdiction is not vested in this Court because the district court has not yet considered whether [a] COA should issue.").

The majority reads these cases as unequivocal declarations that a prior district court COA determination is a jurisdictional requirement. But, as *Sonnier* and *Whitehead* make clear, it is "the COA requirement of 28 U.S.C. § 2253(c) [that] is jurisdictional." *Sonnier*, 161 F.3d at 945-46; *Whitehead*, 157 F.3d at 388. The requirement of a prior district court COA determination is not a feature of § 2253(c), but Rule 22. Moreover, we do not need to assume that the prior consideration requirement of Rule 22 is itself jurisdictional to conclude that

it *causes* us to lack jurisdiction. A non-jurisdictional rule may cause us to lack jurisdiction by preventing us from remedying a *preexisting* jurisdictional defect. Whenever the district court has failed to consider a COA, it has, by definition, also failed to grant a COA. Therefore, when the case comes to us, we are jurisdictionally barred from considering it on the merits. That bar could be lifted by the issuance of a COA—but Rule 22 prevents us from doing so because the district court has not ruled first. Thus, under Rule 22, the lack of a district court determination does indeed cause us to be without jurisdiction. But that proposition does not require us to assume that Rule 22 creates an independent jurisdictional bar.

The question, then, is whether Rule 2 allows us to take Rule 22 out of the equation. In *Williams v. United States*, the Seventh Circuit considered a similar situation under its own circuit rules. 150 F.3d 639 (7th Cir. 1998). Seventh Circuit Rule 22.1 required prisoners to seek a COA in the district court before seeking it from the Court of Appeals. *Id.* at 640. Due to a clerk's office oversight, however, no COA ruling was made in the district court. The court chose to make an exception from its usual requirements, writing:

> Section 2253(c)(1) says that "a circuit justice or judge" may issue the necessary certificate. It does not require an initial application to the district court. . . . True, Circuit Rule 22.1(b) instructs litigants to go to district courts first, and initial application to the district judge is good practice. But a court of appeals is entitled to make exceptions to its norms (see Circuit Rule 2), a power we lack when interpreting an Act of Congress. Bypassing the district judge may be essential when time is short (as in death penalty litigation) and may be prudent in other cases—such as this one, in which the issue first arose in the appellate briefs. Far better to put the question to a court that has read the briefs and heard oral argument than to toss it back to a district judge who may have forgotten what the fuss is about. So we have the power to issue a certificate—if Williams meets the statutory criterion.

*Id.* at 640-41.  The same reasoning was adopted by the Ninth Circuit under its rules.  *Sassounian v. Roe*, 230 F.3d 1097, 1101 n.1 (9th Cir. 2000) (considering whether to grant a COA at appellate level, despite Circuit Rule preference for prior district court consideration); *cf. Hayward v. Marshall*, 603 F.3d 546, 554-55 (9th Cir. 2010) (considering whether to grant COA *sua sponte* after overruling circuit precedent that had led to no COA decision being made below), *overruled on other grounds by Swarthout v. Cooke*, 131 S. Ct. 859, 862-63 (2011); *Wilson v. Belleque*, 554 F.3d 816, 826-28 (9th Cir. 2009) (holding that the court can rule on a COA despite the district court not having ruled first).

Although the Seventh and Ninth Circuits were operating pursuant to their own circuit rules, their reasoning is no less applicable under the Rules of Appellate Procedure generally.  In *United States v. Mitchell*, the D.C. Circuit relied on Rule 2 to consider whether to grant a COA, despite the fact that the district court had not yet done so.  216 F.3d 1126, 1130 (D.C. Cir. 2000).  In reasoning similar to the Seventh Circuit's, the court cited the "late stage in the proceedings" as a justification for suspending the usual rule that a district court must pass on a COA request before a circuit court may consider it.  *Id.*  That decision was permissible, the court argued, because "any defect in procedure occasioned by the appellant's failure to make application in this case is not jurisdictional, given the language of 28 U.S.C. § 2253(c)(1), and Rule 22(b)(2)."  *Id.; see also Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1310-11 (D.C. Cir. 2002) (declining to remand despite lack of a district court COA ruling and denying COA).  I agree with our sister circuits and would hold that the requirement that the district court make a COA determination before we do is a non-jurisdictional procedural requirement based in the Rules of Appellate Procedure.

## III

Of course, simply because we can invoke Rule 2 does not mean that we should.  Usually, we should not.  We have acknowledged, though, that for select

cases—such as those where "time is truly of the essence" and "important public policy issues are involved"—Rule 2 "recognizes the need for special handling." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1161-62 (5th Cir. 1969). Rule 2 may be especially appropriate where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Id.* at 1162.

Remanding the case merely for a COA determination now would needlessly contribute to an already lengthy delay. Moreover, the question of whether a COA should issue is easily resolved in light of recent precedents. Ramirez Cárdenas argues that the district court erred in dismissing his application as successive and that he is entitled to relief for the State's violation of his VCCR claim. "[W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). The parties agree that the district court's procedural ruling was at least likely erroneous in light of our decision in *Leal Garcia*. 573 F.3d at 224 (holding that application raising claims under *Avena* and the President's Memorandum was not successive to initial application raising only consular access claim). Whether Ramirez Cárdenas is entitled to a COA, therefore, depends on whether jurists of reason would find it at least debatable whether he has stated a valid claim of the denial of a constitutional right.

Respondent argues that Ramirez Cárdenas's claims are foreclosed by *Leal Garcia*, in which we held, pursuant to facts highly similar to those here, that *Medellín* left no room for relief in a federal habeas application based on *Avena*

16

or the President's Memorandum. 573 F.3d at 224. Ramirez Cárdenas argues that our ruling in *Leal Garcia* is not determinative for three reasons: first, because the prisoner in that case did not explicitly seek a stay of proceedings in order to give the United States and the State of Texas time to pass implementing legislation bringing the United States into compliance with the VCCR and *Avena*; second, because our opinion in *Leal Garcia* does not address the effect, if any, of the Governor's letter to federal authorities; and third, because *Leal Garcia* did not account for the ICJ's January 19, 2009 judgment.

Each of these grounds for distinguishing the cases, however, is without merit. We decided *Leal Garcia* on the ground that

> [t]he Supreme Court's decision in *Medellín v. Texas*[] has deprived the *Avena* decision and the Bush declaration of whatever legal force Leal might claim they ever had. Leal cannot now argue that Texas was required to review his case because *Medellín v. Texas* foreclosed this contention by holding that neither the ICJ nor President Bush had authority to order the State to conduct such a review.

573 F.3d at 224 (footnotes omitted). Whether or not Ramirez Cárdenas requested a stay of proceedings is not relevant to the applicability of the substantive holdings of *Medellín* and *Leal Garcia*. *See Leal Garcia v. Texas*, 131 S. Ct. 2866, 2867 (2011) (per curiam) ("Our task is to rule on what the law is, not what it might eventually be."). Similarly, neither the ICJ's 2009 ruling nor the Governor's July 2008 letter alter the substance of the Supreme Court's ruling, in *Medellín*, regarding the State's obligations under domestic law. Accordingly, the issues in this case are fully resolved by our precedent in *Leal Garcia*. Ramirez Cárdenas has therefore failed to meet the requirements for issuance of a COA under *Slack*.

## IV

The majority reads our cases as establishing an independent jurisdictional bar, based in Rule 22, that prevents us from considering whether a COA should issue unless the district court has ruled on the COA first. It does so because a

number of our cases have stated that the lack of a district court ruling caused use to lose our jurisdiction. But the majority, in my view, has misunderstood the mechanism by which that causation occurs. If the Rule 22 prior consideration requirement is enforced, it will indeed cause us to be without jurisdiction—because it will result in the absence of a COA. But the absence of a COA is what creates a jurisdictional bar, not Rule 22 itself. Therefore, in light of the substantial delay in this case and the relatively straightforward nature of the legal issues raised, I would invoke Rule 2 to suspend Rule 22 and would deny COA. I therefore dissent.